Randall *v.* Vroom.

GEORGE D. RANDALL and others

*v.*

PETER D. VROOM and others.

1. To sustain a conveyance, sought to be set aside because intended to defraud creditors, the consideration must be both good and *bona fide.*

2. A conveyance of an undivided half of a farm made by a debtor to his sisters (who owned the other undivided half), three days after the service of a summons on him, the only consideration being their assumption of the encumbrances thereon, which were less in amount than the actual value of the debtor's interest,—*Held,* to fall within the rule, and the conveyance ordered to be set aside as against the creditor.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. John A. Cobb,* for complainants.

*Mr. A. A. Clark,* for defendants Jane and Martha Vroom.

Randall v. Vroom.

THE CHANCELLOR.

The complainants, judgment creditors of Peter D. Vroom, by their bill call in question the *bona fides* of a conveyance made by the judgment debtor to his sisters, Jane and Martha Vroom, of his interest (one-half) in a farm of one hundred and thirteen and twenty-six hundredths acres in Somerset county. The sisters owned the other half of the property. It was an excellent farm. They and his family lived upon it. It was tilled by Peter's son, who was about eighteen years of age, and a man hired by the sisters. Peter's half of the farm was subject to two mortgages, one given September 6th, 1867, to Gertrude M. Voorhees for $2,000, with interest, the other for $1,050, with interest, given April 1st, 1875, to Gilbert L. and John Ammerman, and also a judgment recovered October 29th, 1875, against him by confession, by the administrators (his brother Jacob and brother-in-law Isaac L. Pittenger) of his mother, for $1,110.84, debt, besides costs. Under the execution on that judgment a levy had been made on Peter's interest (one-half) in the personal property on the farm. His interest was appraised, in the appraisal which was made with a view to the exemption to which he was entitled under the statute, at $566.50.

On the 2d of February, 1876, the complainants began a suit by summons, returnable on the 14th of that month, against him in the supreme court. The summons was served on him on the 4th of that month, and on the 20th of March following a judgment in favor of the complainants was entered against him in that suit for $1,023.52. An execution against goods and lands was issued on the judgment on the same day, and under it a levy was made upon his interest in the farm. By deed of the 7th of February, three days after the service of the summons on him, he conveyed his interest in the farm to his two sisters, Jane and Martha, for the consideration, as expressed in the deed, of $4,000. The consideration was, as appears by the deed, their assumption of the mortgages and the amount due on the judgment to the administrators of his mother; which

amount was in the deed said to be $768.52. Under the execution on that judgment, Jane and Martha, on the 16th of March, 1876, sold all his interest in the personal property before mentioned, and, through Pittenger, bought it for $230.81. The complainants file their bill to set aside the conveyance of Peter's interest in the farm.

That the conveyance was made at a time and under circumstances calculated to excite suspicion as to its *bona fides,* is most manifest. Peter had been sued by the complainants for a large debt. The conveyance was made to his two sisters, his co-tenants in common of the farm. They paid him nothing for it. There was no reason which would have induced him so to dispose of the property at that time except the suit. His sisters indeed say that their reason for acquiring the title to his interest in the property was, that he was careless and inattentive to the farm, and had become intemperate in his habits, but this, while it may have constituted a good reason why they were desirous of obtaining his interest, would not have been likely to have been regarded by him as an inducement for transferring to them all his interest in the property, without consideration, except the assumption of the payment of the encumbrances on it, and so giving to his sisters the means of putting his family out of doors. In this connection it is worthy of remark that, shortly before the complainants began their suit against him, the sisters had sent their brother Jacob to him, at Orange, to ascertain at what price he would sell his interest in the farm to them, and he then refused to sell at a lower valuation than ninety dollars an acre, or about $5,000 for his interest in the farm, not including his interest in the personal property, which latter interest he swears was worth $600 or $700. He swears that his interest in the farm was worth $7,000; that after the summons was served in the complainants' suit, his sisters, his brother Jacob, and his brother-in-law Pittenger, advised him to convey the property to his sisters Jane and Martha; that he did so; that they gave him nothing for it; that he conveyed it to them because he

Randall *v.* Vroom.

was "in a tight place," and they advised him to do it; that his brother and sisters advised him to sell it before the sheriff should come to levy under an execution on the judgment, which the complainants would get; and he says that they said that they thought by that means the complainants would be prevented from "getting anything" on their judgment in their suit. He says, again, that he had no other land, and that he conveyed the property in question because he was advised to make the conveyance to his sisters before the complainants could levy upon it, and that the object was to defeat the complainants in obtaining execution of their judgment, when it should have been recovered, and that if it had not been for the complainants' suit he would not have made the conveyance at that time; that his sisters never said anything about the conveyance until the complainants sued him, and that he never would have conveyed it in the way he did, if it had not been for the suit.

The defendants, Jane and Martha, by their answer (though it is under oath, the bill required answer not on oath,) allege that they had no knowledge or information when the conveyance was made that the complainants had brought a suit against Peter. Peter, however, not only swears, as before stated, that they did know of it, but, leaving out of consideration the testimony of Peter's son and Liebold, Jane herself (she of the two sisters appears to have had most to do with the conveyance), though she denies it in her testimony, does so, at first, only in a qualified manner. She says she does not *think* she had any knowledge that Peter had been sued by Randall and Lamb, and she adds that Peter had said very little to her about it. And here it may be remarked that, though she swears that Pittenger and her brother Jacob had nothing to do with the agreement between her and Peter, Pittenger, who is a witness for her and her sister, swears, testifying in reference to the personal property, that at the time Jane and Martha bought the farm, he told them that if they bought the farm

of Peter for the encumbrances they must include the personal property. He also testifies that Peter sold the personal property to them, and that he sold it to them the same night they bought the farm, and at the same time, and that Peter put his own price upon it. It seems, therefore, that Pittenger did take some part in making the agreement, although Jane swears that he did not.

Again, Jane's testimony on the subject of Peter's subsequent expression of dissatisfaction with the conveyance, is by no means satisfactory. Peter had sworn that he had spoken to his sisters immediately after the conveyance, expressing his dissatisfaction, because he had received nothing for it, and had testified that he then told Jane that "he would not stand it." In reply, she testified as follows: "Peter never made any complaint to me or to my sister, to my knowledge, about being dissatisfied about the deed; he wasn't dissatisfied about the deed; it was about other things, nothing in particular; he was dissatisfied with everything; he said I had not done as I ought to; I don't know that there was anything said about my not having paid enough for his interest in the land."

Most significant upon the question of *bona fides* is the action of the parties to the transaction under consideration in reference to the judgment in favor of the administrators. By the deed the grantees assumed payment of it as part of the consideration, and yet, under it, Peter's interest in all the personal property on the farm was sold and bought in for the sisters. If the amount due on that judgment constituted so much of the purchase-money, what right had they to sell his interest in the personal property? He swears that he did not agree to transfer his interest in the personal property, but Pittenger swears that he did, and that he put his own price upon it; what price he put upon it, however, they do not say; nor is there any evidence that he did agree to transfer it. Pittenger says the amount of the judgment was apportioned, part on Peter's interest in the farm, and part on his interest in the personal property,

Randall *v.* Vroom.

but he says he cannot say what the apportionment was. The deed, however, declares that the grantees assumed payment of the amount due on the judgment as part of the purchase-money of Peter's interest in the farm.

Again, the administrators, in assigning the judgment to Jane and Martha, took their note for the sum of $1,110.84, with interest and costs, and Pittenger swears that there were then $1,110 and more due on the judgment to the administrators, the plaintiffs therein, but in the assignment he and his co-administrator declared that there was due on it the sum of $563.49, and that sum was, according to the assignment, the consideration thereof. When Pittenger was asked why he took a note for the full amount of the judgment, when, in the assignment, the amount due on the judgment was stated at $563.49, he declared his inability to explain it. In the deed, the amount due on the judgment is stated at another sum, $768.52.

It appears to me to be clear, from the evidence, that the conveyance by Peter to his sisters, of his interest in the farm, was not made in pursuance of a *bona fide* purchase, but was made with the understanding between him and them that the property would, by that means, be protected for his benefit from the complainants' claim against him. Whether a conveyance be fraudulent or not, as against creditors, depends on whether it was made on good consideration and *bona fide*. It is not enough that it be on good consideration or *bona fide*; it must be both. If it be defective in either particular, though good between the parties and their representatives, it is void as to creditors. 1 *Story's Eq Jur* § 353; *Sayre* v. *Fredericks*, 1 *C. E. Gr.* 205.

The complainants are entitled to relief.